555 So.2d 879 (1989)
Edmund BOWSER, Appellant,
v.
STATE of Florida, Appellee.
No. 88-01683.
District Court of Appeal of Florida, Second District.
December 13, 1989.
Rehearing Denied January 24, 1990.
*880 James Marion Moorman, Public Defender, Bartow, and Allyn Giambalvo, Asst. Public Defender, Clearwater, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for appellee.
CAMPBELL, Chief Judge.
Appellant, defendant below, appeals the judgment and sentence imposed upon him for sale and delivery of a controlled substance. Appellant asserts that the trial court erred in failing to grant his motion to dismiss filed pursuant to Florida Rule of Criminal Procedure 3.190(c)(4). Appellant contended in his motion to dismiss that the undisputed facts surrounding his arrest and conviction established that he was entrapped as a matter of law. We agree, and reverse and remand for entry of an order of dismissal based upon appellant's motion below and this opinion.
The testimony presented at the hearing on the motion to dismiss established that Detectives Robert Hall and John Vidalis were traveling in an unmarked vehicle when they picked up appellant who was hitchhiking. The detectives testified that they had had previous success developing drug cases from hitchhikers. Appellant carried a cloth bag of the type that often contains a bottle of expensive whiskey. According to Detective Hall, a lot of people use this type of bag to carry their drugs. When appellant got in the car, Detective *881 Hall said, "Oh, I know what that is for," referring to the bag. Appellant indicated that there was nothing inside and he did not have a "stash." He stated, however, that since he had just left a doctor's office where he had had his arm rebroken and set, he did have a prescription for Tylenol III (codiene), but had no money to pay for it. Detective Hall indicated that he had money.
Detective Hall further testified that there was "an environment or atmosphere in the car at that time if he would be receptive, if we bought the medication for him that he'd be willing to party with us."
The detectives then drove appellant to a Walgreen's store where Detective Hall gave appellant $10.00, and appellant had the prescription filled at a cost of $4.09. Appellant returned the change from the $10.00 to Detective Hall. Appellant told him that "it goes good with beer," so Detective Hall purchased a six-pack. When they got back to the car, appellant asked, "What would be fair?" Detective Hall then gave appellant three dollars and asked him for six of the pills.
Detective Hall admitted that he had not known appellant before, that appellant was not the subject of any criminal investigation, that appellant had no prior record and that appellant had a cast on his arm and had told him that he was coming from the doctor. Detective Hall also stated that, to his knowledge, appellant's prescription was valid.
After hearing the testimony and the argument of counsel, the trial court denied appellant's motion to dismiss. Appellant entered a plea of nolo contendere, reserving the right to appeal the issue of entrapment.
The traditional subjective test to be applied to cases where entrapment is claimed is whether the defendant was "predisposed" to commit the crime in question. Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). However, in Cruz v. State, 465 So.2d 516 (Fla.), cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985), the Florida Supreme Court adopted a threshold objective test to be applied before the case goes to a jury, i.e., entrapment as a matter of law. The objective test looks to the conduct of the police, not the predisposition of the defendant. If the police activity is found not to be entrapment as a matter of law, it is sent to the jury to determine if it is entrapment under the traditional subjective test.
Neither party has addressed the application to this case, if any, of section 777.201, Florida Statutes (1987). However, we determine it to be appropriate to state that we decline to follow the footnoted suggestion of our colleagues of the third district that the objective test of Cruz has been abolished by section 777.201. See Gonzalez v. State, 525 So.2d 1005 (Fla. 3d DCA 1988); State v. Lopez, 522 So.2d 537 (Fla. 3d DCA 1988). Other colleagues on the fourth district apparently concur with our view that the Cruz objective test remains viable. State v. Burch, 545 So.2d 279 (Fla. 4th DCA 1989). There is nothing express or implied in the wording of section 777.201 which, to us, can be seized upon to reveal any legislative intent to abolish the Cruz objective test. Moreover, while the Cruz decision recognizes that its objective test analysis is not founded on constitutional principles, it does parallel a due process analysis. Cruz, 465 So.2d at 520, n. 2. As the Cruz court stated: "The objective view is a statement of judicially cognizable considerations worthy of being given as much weight as the subjective view." Cruz, 465 So.2d at 520 (emphasis supplied). As the New Jersey Supreme Court pointed out in State v. Molnar, 81 N.J. 475, 410 A.2d 37 (1980), the objective test is utilized to prevent conduct that tends to impugn the integrity of a court. Those matters are such that they are exclusively within the power of a court to determine as a matter of law.
While law enforcement officials are allowed to use a variety of methods to detect and punish ongoing criminal activity, those methods may not be used where there is a danger that an innocent person may be hurt. Even in Sorrells, the seminal case on subjective entrapment, the court acknowledged that:

*882 A different question is presented when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute... .
Id. 287 U.S. at 442, 53 S.Ct. at 212.
In applying the objective view, the crucial question is whether the police conduct falls below the standards for the proper use of governmental power. Cruz, 465 So.2d at 521. Entrapment as a matter of law is determined by a two-prong test. The first question is whether the police activity has as its end the interruption of a specific ongoing criminal activity. Police activity that seeks to prosecute crime where no such crime exists but for the police activity engendering the crime falls below the standards for the proper use of governmental power. The second question is whether the police activity utilizes means reasonably tailored to apprehend only those involved in the ongoing criminal activity. Cruz, 465 So.2d at 522. The activity falls below the standards for proper use of governmental power if the police techniques are inappropriate or if they induce or encourage the defendant to engage in criminal conduct by: (1) Making false representations designed to induce the belief that such conduct is not prohibited; or (2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.
Here, applying the first part of the objective test, it is clear that the police activity in question did not have as its end the interruption of a specific ongoing criminal activity. The detectives in essence manufactured a crime by seeking out appellant and persuading him to sell the codeine tablets which appellant did not have until Detective Hall paid for the prescription. Prior to this incident, the detectives had no information whatsoever that appellant had been involved in any illicit drug activity.
In Marrero v. State, 493 So.2d 463 (Fla. 3d DCA 1985), pet. for rev. denied, 488 So.2d 831 (Fla. 1986), an informant came to the police with information that the defendant was involved in drug trafficking. Although the police had no prior information about him, they sought him out and supplied him with marijuana which he was to sell. The court held this was clearly entrapment. By supplying the drugs involved in the transaction, the police did not facilitate discovery or suppression of any ongoing illicit traffic in drugs. Here, but for the police action of paying for appellant's prescription, appellant would not have had the drugs to sell.
Applying the second part of the test, one must evaluate the type of actions the police used. The police here picked up appellant, who was young, of limited education and in obvious pain and discomfort due to his broken arm. Knowing that appellant had a prescription for a controlled substance and no money to pay for it, the police induced him to sell the tablets to them. In doing so, the detectives induced appellant to engage in criminal conduct by employing methods of persuasion that created a substantial risk that appellant, not otherwise shown to be ready to commit the offense, would commit the offense.
We conclude that the police activity here cannot, as a matter of law, be sustained under the standards established in Cruz. Since the police activity here amounted to entrapment as a matter of law, the subjective test need not be discussed. We must accordingly reverse and remand with directions to dismiss the charges against appellant.
SCHOONOVER and ALTENBERND, JJ., concur.